SANG, CHONG LUNG & CO. *v.* UNITED STATES

**No. 4396.**—Invoice dated Hongkong, May 5, 1922.
Certified May 5, 1922.

Entered at San Francisco, Calif., June 22, 1922.
Entry No. 13230.

(Order restoring case to calendar dated September 26, 1938)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*John J. McDermott* and *Samuel D. Spector*, special attorneys), for the defendant.

EVANS, Judge: This is an appeal from a finding of value made by the appraiser upon a quantity of bamboo baskets entered at the port of San Francisco on June 22, 1922. It appears from the testimony that the appeal was mislaid or lost either in the appraiser's or collector's office at San Francisco until a short time ago. The record further discloses that the importation was made under the Tariff Act of 1913, that the fee was paid, but that no samples have been preserved. Some effort was made to show that the appraisement was illegal because of the failure to examine the designated number of packages. It appears from the record that 14 packages were designated for examination and that there were 32 packages in all. No samples having been preserved, under the rulings we are powerless to find a value in this case. (*United States* v. *Tower*, 24 C. C. P. A. 456, T. D. 48912.)

On the question of the legality of the appraisement, we quote from the testimony of the Government examiner as follows:

Q. In 1922, were you an examiner and did you, as an examiner attached to the appraiser's office, handle the merchandise covered by that invoice?—A. I did.

Q. Would you examine the invoice and tell us whether or not you advanced the entered value on any of the items, and if so state the case number of each item you advanced?—A. I did. And the case number is 38.

Q. That case was advanced. Are there any others?—A. Case 50.

Q. Would you look at cases 39 to 44?—A. Cases 39 to 44 were not ordered up from the wharf.

Q. I am speaking of your advances. You advanced the value of the merchandise in case 38, 39, to 44, and cases 47 to 73; is that correct?—A. That is correct.

Q. Which of those cases, if any, were before you when you made your appraisement, or when you made your advisory appraisement?—A. Case 38.

Q. How do you know that?—A. By the method I followed at that time, by examining the cases which had the number encircled.

Q. That numbered case is encircled?—A. Yes.

Q. That means to you that case was examined by you?—A. That case was examined by me.

Q. Out of cases 39 to 44, what cases, if any, were examined?—A. There were no cases out of numbers 39 to 44.

Q. Out of 47 to 73, which were examined?—A. Out of 47 to 73, case 50 was examined.

The basis of Mr. Hearty's statement that he examined but two out of the total number of cases is that he can remember it because he placed circles around the cases. The Government attorney claims in his brief that by scrutinizing the invoice he has been able to determine that the following cases were examined: Nos. 38, 45, 50, 74, 75, 76, 77, 79, 80, 82, 83, 85, 88 and 89, because that number of cases do bear a circle similar to the circles around cases 38 and 50. Mr. Hearty's attention, neither on direct nor cross-examination, was called to the other circles on those numbers and we are loath to hold on the testimony, in view of the circumstances pointed out, that the appraisement was illegal in that respect.

In view of this apparent conflict between the oral testimony and the record, the court will direct that the case be placed on the next San Francisco docket for the purpose of reconciling what appears to be a conflict between the oral testimony and the official papers.

It is so ordered.